### ORTH v. ANDERSON et al.

(Supreme Court, Appellate Division, Third Department. March 13, 1914.)

1. MORTGAGES (§ 417*)—PERSONS ENTITLED TO FORECLOSE.

If defendant was really the debtor and plaintiff merely signed for defendant's accommodation, the fact that plaintiff's name appeared upon a renewal note as maker with defendant's name as indorser would not affect their actual relations to each other, nor put plaintiff in a situation, as the payer of the renewed note, which defendant's wife had made and secured by mortgage on her property for defendant's accommodation, and which plaintiff had indorsed for the same reason, to foreclose the mortgage against the wife.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1227–1236; Dec. Dig. § 417.*]

2. PRINCIPAL AND SURETY (§ 112*)—RELEASE OF SURETY—PAYMENT.

A note executed by defendant and plaintiff, and signed by defendant's wife for his accommodation, became due on August 3, and went to protest, and on August 4th a new note for the same amount was signed by plaintiff and indorsed by defendant, which plaintiff thereafter placed to his own credit in a bank, and gave the bank his check for the amount of the original note, paying interest with money furnished by defendant, and the bank marked the original note "paid" and delivered it to plaintiff. Held, that the acceptance by plaintiff of the new note extinguished the wife's obligation as surety on the original note.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 226–234; Dec. Dig. § 112.*]

3. BILLS AND NOTES (§ 430*)—PAYMENT—PAYMENT BY NOTE.

The substitution of a note signed by a third person in place of a prior note constitutes a payment of the prior note, if that was the intention of the parties.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1251–1256; Dec. Dig. § 430.*]

4. PRINCIPAL AND SURETY (§ 104*) — DISCHARGE OF SURETY — EXTENSION OF TIME OF PAYMENT.

An extension of the time of payment to the debtor discharges a known surety on a note, who did not consent to such extension.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 186–190, 193–195, 197–199, 200; Dec. Dig. § 104.*]

5. MORTGAGES (§ 86*)—VALIDITY—DURESS—EVIDENCE.

Evidence held to show that the note and mortgage involved which were signed by a married woman were executed by her through duress.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1350, 1355, 1364; Dec. Dig. § 86.*]

Smith, P. J., and Lyon, J., dissenting.

Appeal from Special Term, Sullivan County.

Action by Philip Orth against Frank S. Anderson and others. From a judgment for plaintiff, defendants appeal. Reversed, and complaint dismissed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

146 N.Y.S.—44

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

John D. Lyons, of Monticello, for appellants.
James H. Curtis, of Callicon, for respondent. '

JOHN M. KELLOGG, J.  If we assume that Mrs. Anderson ex-
ecuted the note and mortgage without duress, the plaintiff's testimony,
the uncontradicted evidence, and the reasonable inferences therefrom
put him out of court.

The defendant Frank S. Anderson is a lawyer, and was a director in
the Callicoon National Bank.  The plaintiff was his life-long friend
and his client.  Anderson had conveyed his house and lot to his wife
and infant son, by a deed which for some time was not recorded.  It
was, however, recorded some time after May 3 and before August 6,
1910.  He and his wife had domestic troubles, and he left her before
the note in question became due.  He had arranged with the plaintiff
for the indorsement of his note at the bank.  His wife signed the note
and mortgage in question for her husband's accommodation solely, un-
der the agreement that he was to indorse it and pay it when due, with-
out renewal.  The note was dated May 3, 1910, and payable to the
plaintiff's order, for $2,500, three months from date, with interest.
Anderson took it to the plaintiff, who indorsed it at his request and
solely for his accommodation.  The plaintiff says he gave directions that
the mortgage should be recorded.  It was recorded and remained in
Anderson's possession.  He told the plaintiff when the note was in-
dorsed that he could not indorse it for the reason that he owed the
bank $2,500, which was the limit of his liability under the law.  He
took the note to the bank.  The cashier suggested that he indorse it,
but he did not, and it was passed to his credit some time during the
day of May 3d.  It became due August 3d, when he had to his credit
in the bank $2,477.12.  The note went to protest.  Nothing was said
to the wife about it.  The plaintiff knew that she was to receive none
of the money from the note; that the debt was the debt of the husband;
that the wife had made the note solely for his accommodation; and
that as between the husband and wife he was in fact the principal
debtor, she the surety.  A new note was prepared and dated August
4th for the same amount, which was signed by the plaintiff and in-
dorsed by Anderson.  The plaintiff took it to the bank August 6th, had
it placed to his credit, gave the bank his check for $2,500, the face of
the original note, and paid the interest with money furnished by An-
derson.  The bank marked her note paid and delivered it to the plain-
tiff.  Upon the same day the summons and complaint in foreclosure
were served upon the wife and the infant son.  The summons and
complaint, the papers in foreclosure, together with the affidavits for a
receiver, were prepared in Anderson's office, and he admitted personal
service.  When the note upon which Anderson was indorser became
due, November 4th, it was renewed in like manner; the plaintiff re-
ceiving credit for the new note, giving his check, and receiving the old
note.  The note was renewed from time to time.  The last renewal be-
came due November 8, 1911, before which time Anderson had left for

parts unknown.  He was evidently a man of means, and had at different occasions during the time in question quite large sums on deposit in the bank.  The transaction at the bank August 6th, when the husband's name was substituted on the note and the wife's name left off, is properly characterized by the plaintiff when he swears "after this note was due he (Anderson) went on a note in this same bank and created a new obligation to take up this note."

[1, 2]  The fact that plaintiff drew his check for the wife's note is entirely unimportant.  The renewal of the husband's note was made in the same manner, and it is conceded that it was a mere renewal and not a payment.  It is common experience that in making renewals a bank gives credit for the new note, delivering the old one upon receipt of a check, and at times no check is given.  It is a mere matter of bookkeeping and convenience which method is adopted; the effect of the transaction is the same.  The fact that upon the note the plaintiff appears as a maker and Anderson as an indorser does not affect their actual relations to each other.  It is evident that Anderson did not indorse the note for the plaintiff's accommodation, but because he was the actual debtor, the party who had the money, the party for whose accommodation the plaintiff had indorsed the first note.  Both maker and indorser had in mind that Anderson was making the renewal, as he paid the interest.  The relations of the parties, therefore, were that Anderson was the principal debtor, the plaintiff his surety for his accommodation solely, while the wife had no knowledge whatever of the transaction.  Her note was extinguished by the acceptance of the new note; her principal and his surety had relieved her from further obligation.  At the time he indorsed Mrs. Anderson's note, the plaintiff claims he did not know of the unrecorded deed.  The complaint shows that at the time her note was taken from the bank and the new note substituted he had knowledge of that deed.  With such knowledge, he and Anderson replaced her note in the bank with their obligation, payable in three months time, and from time to time made renewals thereof.  The plaintiff well understood that Anderson was the party liable for the payment of the renewal notes.  Referring to the last renewal, he was asked: "Q. Why didn't you take steps to compel Frank Anderson to pay that note?"  He answered: "That note was not due at that time; it did become due shortly after."

We have seen that the bank indorsed the wife's note as paid.  The cashier and the plaintiff swear it was paid.  It was evidently deemed important by Anderson and the plaintiff that the wife's note should be paid in order to lay the foundation of this action to foreclose the mortgage.  There can be no question therefore but that it was contemplated by the bank and by both parties to the new note that the old note was paid by substitution of the new one.

[3]  It is familiar law that where a note, with a third person upon it, takes the place of a former note, it will be considered a payment if the transaction indicates that such was the intent of the parties.  It is clear that the plaintiff and Anderson were acting in concert to take from the wife and infant son their home in payment of the husband's debts.  In carrying out the conspiracy it was overdone, and resulted in substi-

tuting for the wife's note a note of the principal debtor intended to act as payment, and which actually extinguished the obligation of the wife. The note, however, was not paid by the plaintiff's check, or by the plaintiff, but was in fact paid, so far as Mrs. Anderson is concerned, by the note which the original debtor caused to be substituted in place of it. Anderson agreed with his wife to pay the note when due. In substituting the new note for the old, it may be that Anderson and the plaintiff had an ulterior purpose; but in considering an act done by them we are not bound to give them the benefit of their fraudulent intentions, but may construe their acts according to their obligations, giving the transaction the effect which it naturally would have if honestly undertaken. The transaction therefore should be considered not as a payment by the plaintiff on account of his indorsement of the wife's note, but as the substitution by Anderson and plaintiff of their note, thus extinguishing the liability of the wife. He understood the mortgage was upon the husband's property. His understanding therefore was that he and the wife were sureties for the husband, and they were secured by a mortgage of the husband's property. If this understanding was right and the wife had been compelled to pay the note, she could have been subrogated to the plaintiff's rights in the mortgage. If the transaction at the bank August 3d did not discharge the wife and her property, then the extension of the time of payment of the obligation freed her and the property. The real loan which the bank made to the husband on the note of May 3, 1910, was never paid to the bank until after November 8, 1911. During that time it held different notes extending the loan.

[4] Where it is known that a party to a paper is not the real debtor but is surety for another, an extension of time of payment to the real debtor discharges the surety who did not consent thereto. Bank of Albion v. Burns, 46 N. Y. 170; National Park Bank v. Koehler, 204 N. Y. 174, 97 N. E. 468.

In Dibble v. Richardson, 171 N. Y. 131, 63 N. E. 829, the defendant had borrowed from his wife's mother certain securities, and with her consent pledged them to his bank. The bank requiring payment of the loan, the mother-in-law furnished him the money to liquidate it, receiving therefor the bond of his wife, secured by a mortgage upon her real estate. He joined in the mortgage but not in the bond. The mother's will provided that any indebtedness from her son-in-law should be treated as a legacy to him. The executor of his deceased wife defended an action to foreclose the mortgage, claiming that the bond was forgiven by the provision in the will. The court held that in a way the son-in-law, by requesting the loan of the securities, became indebted to the testatrix, and that the wife was a surety only, and that therefore the will terminated her liability upon the bond, as the discharge of the principal carried with it a discharge of the surety. That case is quite similar to the case at bar. Here the wife gave the note and mortgage as an accommodation to the husband and he thereby became obligated to pay it. Here the husband agreed with her to indorse and pay the note. If the wife in the Richardson Case was a surety for the husband and entitled to protection as such, it

must follow that Mrs. Anderson was a surety and is entitled to all the consideration given to a surety when her relation was known to the parties interested. The wife and the plaintiff, in a way, were sureties for the husband. If the note and mortgage were otherwise valid, the extension of time would clearly extinguish them. The mortgage was given solely to provide for the payment of the note which she had made. The action of the plaintiff and Anderson, which destroyed her liability upon the note, effectually disposed of the mortgage. The husband was clearly solvent at the time; she was prevented from taking any proceedings to indemnify or protect herself; and the law presumes damages from such an extension.

In any event, the action is prematurely brought. The loan was not paid to the bank by plaintiff until November 8, 1911, and was kept alive until then by successive time renewals. The plaintiff swears that after he received the wife's note from the bank he took it to Anderson's office and directed the foreclosure. At that time he and Anderson had substituted a new note, on three months' time, in place of the note in suit. If the plaintiff and Anderson had not been acting in collusion, the acceptance by the bank and the plaintiff of the three months' note in place of the other would have been a complete defense for the husband and wife. The fact that the husband was acting in collusion with plaintiff does not deprive the wife and the son of that defense.

[5] The assumption, however, that the wife was ever liable upon the note and the mortgage is not warranted. The jury found from the evidence that they were obtained by duress; the court disregarded the verdict and made findings to the contrary. In my judgment the verdict is well sustained by, and indeed required by, the evidence. If her story is true, the note was clearly obtained by duress. She is corroborated by a neighbor who, as Anderson was leaving the house, heard her ask him to return the papers. Also by the fact that as soon as he left the house she telephoned the bank not to take the note. The fact that the husband was deceiving her as to the purpose of her note and, if the plaintiff's story is true, was also deceiving him, indicates that he was in a frame of mind to do anything which was necessary to accomplish his purpose. The bringing of the action to foreclose the mortgage against himself, with an application for a receivership, and all the circumstances, are in her favor. The cashier did not make it clear in his direct evidence whether she telephoned him not to take the note before or after he received it. That the note was finally taken by the bank with knowledge of its infirmity is shown by his evidence when recalled for cross-examination that later in the day, about 4 o'clock, he had another conversation with her in which he asked her if the bank should take the note, and that she assented. She denies that she consented. The cashier was unfriendly to her and had an action pending with her with reference to the rent of this same house. It would seem to be unusual for a bank to place a note to the credit of a customer without his indorsement. The cashier says he requested it; but he was evidently controlled by Anderson, who had secured his position for him. These circumstances may well be con-

sidered in weighing his testimony. It is not probable that after she had notified him not to take the note that she subsequently consented. The bank became the owner of the note, with notice of its infirmity. The plaintiff swears that Anderson said that he did not indorse the note as he already was owing the bank $2,500 and could not make a further loan. This note was placed to his credit, and any notes due the bank were evidently liquidated. The statement, if made, was untrue. His credit with the bank was apparently good. The bank had not asked for an indorser; the plaintiff asked for no security; there was no talk between him and the plaintiff about security; the note of the wife, the mortgage and indorsement by the plaintiff were entirely unnecessary; they were simply a part of the scheme which he was putting in force to deprive the wife and son of their home. The bank apparently would have discounted his note if he had needed the money, as in times past. There is no evidence that he actually needed any money. The testimony of the domestic, called by the plaintiff, is not convincing. It is not clear that she was in a position to overhear the conversation. She evidently heard too much. She admits that Mrs. Anderson accused her of stealing certain things ; it is evident that some things belonging to Mrs. Anderson were found in her suit case, and her explanation of the occurrence is weak. The notary who took the acknowledgment was a clerk in Anderson's office, probably more or less under his influence, and cannot be considered entirely disinterested.

The complaint alleges that the deed to the wife and son were recorded before action brought. The plaintiff, on cross-examination, was unable to explain when and where he obtained that information. The conduct of the plaintiff with reference to this entire transaction is so unjust and fraudulent that it cannot be well characterized. It reflects upon his manhood and his credibility as a witness. He was evidently in collusion with Anderson to defraud the wife and infant son out of their property. It is unnecessary to spend much time in determining at what time he entered into the illegal conspiracy; it is better to assume that he was a party to it from the beginning. He says he had no knowledge of the unrecorded deed at the time he received his mortgage. He is not entitled to credit in that statement. He certainly had knowledge of it August 6th. Her ownership of the property was the cause of the conspiracy. There was no reason why Anderson should want to foreclose the mortgage upon his own house. All parties to a conspiracy to defraud may fairly be chargeable with knowledge of the purpose sought to be accomplished thereby. The fact therefore that the deed was unrecorded is of no advantage to him.

The plaintiff, in making out his case, has established the fact that the note and mortgage had no further validity and that the action in any event was prematurely brought. It may be said that Anderson would naturally keep from the cashier and the plaintiff a knowledge of the intended wrong. He was trying to do a sharp and dishonorable act, but did it in a bungling way. The note became due August 3d. The new note was not substituted until the 6th, on which date this action was brought. The scheme as attempted to be worked out was crude, and perhaps some parts of it hastily formed. If Anderson was

really a lawyer, he may have planned differently. He knew that a National Bank could not take a mortgage as security for an original loan, but that the bank might be subrogated to any security held by any party to the note, for its payment. Perhaps it was contemplated that the bank, by right of subrogation or assignment, should bring the action of foreclosure. If so, apparently some one connected with the bank would not permit it to be used in that way, especially when it was discovered that the cashier, before the bank altered its position with reference to the note, had knowledge of its infirmities. It may have required that it be relieved from the situation, with the result that the substitution of a new note became necessary. We are not, however, interested in the operations of his mind. It is sufficient that he attempted a gross fraud upon his wife and infant son, that the plaintiff was assisting him, and that the scheme failed.

The judgment should be reversed upon the law and the facts, and the complaint dismissed, with costs.

The findings to the effect hereinafter named are reversed:

That the bank took the note in good faith; the seventh and eighth findings of fact; that the plaintiff had no knowledge of the existence of the unrecorded deed and that he had no notice that Adelaide M. Anderson claimed any interest in the property aside from an inchoate right of dower; that plaintiff took the mortgage in question in good faith and for a valuable consideration; the twelfth finding of fact and the thirteenth finding of fact. In lieu thereof the court finds that the bank, when it received said note, had knowledge of its infirmities; that the plaintiff had knowledge of the unrecorded deed at the time he indorsed the note and received the mortgage; that the plaintiff and Frank S. Anderson entered into a fraudulent conspiracy to defraud Adelaide M. Anderson and her infant son of their home by compelling its sale for the husband's debt; that the note and mortgage were obtained by duress and were not the voluntary act of Adelaide M. Anderson; that when the note became due Frank M. Anderson, the original debtor, and the plaintiff put their note, running for three months, in the bank in place of and in payment of it, with the intent that such note should be paid thereby; that the receipt of said new note was an extension of time of said mortgage and of the note of Adelaide M. Anderson; that it was known by the plaintiff that she was a surety thereon for the said Frank S. Anderson, and the extension of time discharged her from her liability; that the action was prematurely brought, the time of the said mortgage having been extended from time to time until November 8th "without her knowledge or consent."

All concur, except SMITH, P. J., and LYON, J., dissenting.